CF# 553852

DO NOT PUBLISH
ORIGINAL FILED

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

JAN 03 1996

BANKRUPTCY COURT
OAKLAND, CALIFORNIA

In re                                    No. 94-43454 TT

JUAN J. PEREZ, etc.,                     Chapter 7

     Debtor.

_____

In re                                    No. 94-43544 TT

DEBRA L. YAU, etc.,                      Chapter 7

     Debtor.

_____

JAMES A. HAVERKAMP and M.C. TAYLOR,      A.P. No. 94-4464 AT
                                         A.P. No. 94-4531 AT
     Plaintiffs,

vs.

JUAN PEREZ and DEBRA L. YAU,

     Defendants.

_____

## MEMORANDUM OF DECISION

Plaintiffs ("Plaintiffs") seek nondischargeable judgments against defendants, the above-captioned debtors, Juan Perez ("Perez") and Debra Yau ("Yau"), under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). For the reasons stated below, the Court finds in favor of Plaintiffs with respect to their claims against Perez under both §§ 523(a)(2)(A) and (a)(6). The Court finds in favor of Yau on Plaintiffs' claim against her. The bases for the Court's conclusions and the amounts of Plaintiffs' claims against Perez determined to be nondischargeable are set forth below.

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

## SUMMARY OF FACTS

In the Spring of 1992, Plaintiffs contacted Perez for advice concerning a contemplated addition to their home (the "Residence"). Perez had been recommended to Plaintiffs by a friend for whom he had completed a similar project. Plaintiffs made it clear to Perez that they had a limited budget for the construction--$100,000--and that, if they could not do the work for this price, they would instead sell the Residence and move. They also made it clear that they wanted the addition to fit the style and quality of the Residence. Perez assured them that the work could be done for this amount and that he would enjoy ensuring that the style and quality of the addition was consistent with the Residence. Perez quoted them a contract price of $92,000.

Perez was accompanied during these meetings by Yau. Yau was and is a woman in her early twenties. Perez is approximately a generation older. Perez represented Yau to be an architect with whom he sometimes worked. However, Perez stressed that Yau had an independent business from his and that hiring one did not necessitate hiring the other. He recommended that Plaintiffs consider using Yau to prepare the plans for the addition and to act as an architect on the construction project. Yau offered to do the work required for the project for $6,500. Yau agreed to pay for any engineering charges incurred.

Based on Perez's and Yau's representations, Plaintiffs executed a contract with Yau (the "Yau Contract") for the price quoted. The

2

MBC 2391

Case: 09-05063    Doc# 84    Filed: 10/27/11    Entered: 10/27/11 21:14:34    Page 2 of 35

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Yau Contract was executed on a pre-printed form agreement prepared under the auspices of the American Institute of Architects (the "AIA"). At the end of the Yau Contract, Yau interlineated a payment schedule providing for a final payment when the building permit was issued. However, the printed portion of the agreement required Yau to provide continuing services during the construction: e.g., to act as the homeowner's liaison and advocate with the contractor in the event of a dispute.

Yau was in fact not a licensed architect. She had received a bachelor's degree in architecture but had not yet satisfied all the requirements to obtain her license. As a result, she was not entitled to call herself an architect and was required to obtain an engineer's approval of any plans prepared for the purpose of obtaining a building permit. During the following year, Yau prepared the plans for the addition. The plans were approved by an engineer, accepted by the local building department, and a building permit issued. Plaintiffs paid the contract price to Yau. Yau did not pay the engineer.

In late May 1993, after the plans were completed, Plaintiffs had still not made a final decision to go ahead with the construction. Perez urged Plaintiffs to make a decision promptly so that construction could be completed before the rainy season started. He represented that, if construction began immediately, he could complete it by early September. He represented that there would be none of the customary delays as a result of the conflicting schedules

3

MBC 2392

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

of subcontractors because all the work would be done by his employees. Perez also assured Plaintiffs that he carried workers compensation insurance. Based on these and the earlier representations described above, in June 1993, Plaintiffs entered into a written contract with Perez (the "Perez Contract").

At the time the Perez Contract was executed, Perez was in fact experiencing serious financial difficulties. His bank account was subject to a levy by the state, and his home mortgage was in foreclosure. Perez did not disclose these facts to Plaintiffs. When asked, Perez assured Plaintiffs that his business was sound. Moreover, contrary to his representation that his and Yau's businesses were separate, Perez had advanced the money to start the business, had signature authority on Yau's business bank account, and was running his checks through her account to avoid the levy on his own account.

The Perez Contract called for four progress payments of $23,000 each--the first due when demolition and clearing was complete, the second when framing was done, the third when sheetrocking was done, and the fourth when the job was complete. The demolition was accomplished swiftly as soon as the Perez Contract was executed. Perez's crew then demanded the first progress payment. Although the debris had not yet been cleared, Plaintiffs made the payment.

Work continued steadily for a time thereafter. Some framing was performed. Perez's crew asked for the second progress payment. Plaintiffs had some misgivings as to whether all work necessary to

4

MBC 2393

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 4 of 35

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

2  entitle Perez to the second progress payment had been done.  However,

3  when they expressed their misgivings to Perez, he gave them plausible

4  explanations for the omitted work.  As a consequence, Plaintiffs made

5  the second progress payment.

6      Work then essentially ceased.  Plaintiffs made repeated calls to

7  Perez's office to find out the reason for the cessation and to urge

8  work to resume.  At first, Plaintiffs received plausible excuses for

9  the delay.  Later, their calls were not returned.  This state of

10  affairs proceeded through August and September.  Plaintiffs became

11  increasingly concerned.  They feared the approach of the rainy season

12  because their house was still not enclosed from the weather.  They

13  were also anxious that work be completed promptly because they and

14  their two small children were living in uncomfortable circumstances

15  due to the construction.  Finally, they wanted to refinance their

16  home mortgage to take advantage of the low interest rates that were

17  then available.  They could have qualified for a refinanced loan

18  except for the ongoing construction.    In early October 1993, during

19  the middle of the night, it began to rain heavily.  Plaintiffs were

20  unable to prevent rain damage to their home.  The next morning, they

21  went to Perez's office and confronted him angrily.  As a result of

22  this confrontation, work on the Residence did resume for a few weeks.

23  Perez then demanded the third progress payment.

24      This time, initially, Plaintiffs refused to make the payment.

25  They insisted that Perez first do the work entitling him to the

26  payment.   Perez's response was to threaten to abandon the job.

5

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 5 of 35

UNITED STATES BANKRUPTCY COURT

For the Northern District of California

Plaintiffs felt that this would leave them in an intolerable position and agreed to make the payment provided that Perez signed an agreement not to divert the payment and to work continuously on the project until it was completed. Perez signed such an agreement, received the payment, and abandonned the project anyway.

In January 1994, Plaintiffs formally terminated the Perez Contract and obtained bids from other contractors to complete the job. They selected the lowest bidder, and ultimately the work was completed.

### APPLICABLE LAW

Plaintiffs seek nondischargeable judgments against Perez and Yau pursuant to both 11 U.S.C. § 523(a)(2)(A) and (a)(6). Section 523(a)(2)(A) renders nondischargeable a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;...

A claim under 11 U.S.C. § 523(a)(2)(A) is similar to a common law claim for fraud. The plaintiff must prove intent to deceive, materiality, justifiable reliance, and proximate cause. Field v. Mans, 116 S.Ct. 437 (1995). However, unlike a common law claim for fraud, a claim under 11 U.S.C. § 523(a)(2)(A) may not be based on a misrepresentation concerning the financial condition of the debtor or an insider of the debtor. Compare 11 U.S.C. § 523(a)(2)(A) with 11 U.S.C. § 523(a)(2)(B). Additionally, the plain language of §

6

MBC 2395

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 6 of 35

) (A) appears to limit the amount of the dischargeable claim
mount of money or value of the property or services obtained
on of the fraud. Cf., Grogan v. Garner, 498 U.S. 279, n.2
In re Rubin, 875 F.2d 755, 758, n.1 (9th Cir. 1989); In re
80 B.R. 223, 232 (Bankr. 9th Cir. 1995).

ction 523(a)(6) provides that a chapter 7 discharge does not
ge an individual debtor from a debt for "willful and malicious
by the debtor to another entity or to the property of another
"    "willful and malicious" has been held to mean an
tional act that necessarily produces harm."   It is not
ary that the debtor intended to harm the creditor.   In re
i, 780 F.2d 1440, 1442-43 (9th Cir. 1986).   Common law fraud
held nondischargeable under § 523(a)(6).   In re Apte, 180 B.R.
92 (Bankr. 9th Cir. 1995); In re Klause, 181 B.R. 487, 493-94
C.D.Cal. 1995).   However, unlike § 523(a)(2)(A), such a claim
clude both consequential and punitive damages.   In re Britton,
2d 602, 606 (9th Cir. 1991); In re Adams, 761 F.2d 1422, 1428
ir. 1985).   See also In re Bugna, 33 F.3d 1054-5 (9th Cir.
punitive damages nondischargeable under 11 U.S.C. § 523(a)(4)).
he creditor has the burden of proof on a claim of
chargeability.   The standard of proof is by a preponderance of
idence.   Grogan v. Garner, 498 U.S. 279 (1991).

UNITED STATES BANKRUPTCY COURT

7

MBC 2396

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 7 of 35

## DISCUSSION

### A. CLAIMS AGAINST PEREZ[1]

Plaintiffs base their claims against Perez under section 523(a)(2)(A) and (a)(6) on a number of alleged intentional misrepresentations and fraudulent concealments. They contend that Perez misrepresented that Yau was an architect and that her business was independent from his. They contend that Perez misrepresented that he had workers compensation insurance and that his contractors license was in good standing.

Plaintiffs also contend that Perez misrepresented that all the work would be done by his own employees and that he did not use subcontractors. They further contend that Perez lied when he promised to take care to match the style and quality of the addition to the Residence. Additionally, Plaintiffs contend that Perez fraudulently concealed and failed to disclose his serious financial difficulties and lied when he told them that his business was sound.

Finally, in a more general sense, Plaintiffs contend that the Perez Contract was a sham, that Perez never intended to perform it according to its terms. Plaintiffs contend that Perez knew that the addition could not be constructed for $100,000. They contend that the sole purpose of the Perez Contract was to obtain as much cash as

---

[1] Plaintiffs also assert the right to a claim of nondischargeability against Perez pursuant to 11 U.S.C. § 523(a)(6) on grounds of conversion. This claim is premised on Perez's diversion of the third progress payment. Such a claim, if sustained, would give Plaintiffs no right to any damages other than those to which they are entitled on their fraud claim. Therefore, the Court need not address this legal theory.

8

MBC 2397

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 8 of 35

possible before Plaintiffs discovered what was going on and that the work was performed fraudulently so as to make it appear that Perez was entitled to the next progress payment.

Plaintiffs failed to prove one or more elements of some of these contentions. Others were insufficient as a matter of law. For example, Perez's alleged fraudulent concealment and misrepresentations concerning his financial condition may not support a claim for nondischargeability under 11 U.S.C. § 523(a)(2)(A). Such claims are only nondischargeable under 11 U.S.C. § 523(a)(2)(B) if the misrepresentations are made in writing.

Moreover, even if such oral misrepresentations or omissions would give rise to a nondischargeable fraud claim pursuant to 11 U.S.C. § 523(a)(6), under California law, omissions are only fraudulent where there is a duty to disclose. Goodman v. Kennedy, 18 Cal. 3d 335, 347, 348 (1976).[3] Perez had no such duty under these circumstances. The Court was not persuaded that Perez made any affirmative misrepresentations of fact as to his financial condition. The statements described at trial appeared more in the nature of opinions. Plaintiffs also presented insufficient evidence to establish that Perez's representations concerning the status of his workers compensation insurance and contractors license were untrue at the time they were made. In any event, it did not appear that

---

[3] In determining the dischargeability of a claim under 11 U.S.C. § 523(a)(6), state law generally determines whether the plaintiff would have a claim against the debtor. Bankruptcy law then determines whether the claim is nondischargeable. In re Klausa, 161 B.R. 487, 492 (Bankr. C.D.Cal. 1995).

9

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 9 of 35

MBC 2398

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Plaintiffs suffered any damages as a proximate result of any such misrepresentations.

The evidence did establish that, at the time the Perez Contract was executed, Perez was treating the people who worked for him as independent contractors, rather than employees, to avoid paying withholding tax. This practice was the apparent reason, or one of the reasons, why his bank account was subject to a levy. However, the point Perez was apparently trying to make when he made this representation was that the job would not sit idle while subcontractors were performing work for other general contractors. No evidence was presented that this occurred. Rather, Perez's crew appeared to be performing other jobs for Perez or refusing to work because they had not been paid. Thus, this claim must fail for lack of proximate cause.

Plaintiffs did persuade the Court that Perez intentionally misrepresented to Plaintiffs that Yau was an architect, that this was untrue, and this misrepresentation was made with the intent to deceive Plaintiffs. The Court was persuaded that Plaintiffs would not have entered into the Yau Contract had they known the truth concerning her status and that they justifiably relied on the misrepresentation that Yau was an architect in executing the Yau Contract. However, Plaintiffs's claim based on this misrepresentation must also fail for lack of proximate causation.

As discussed above, this Court is convinced that, under 11 U.S.C. § 523(a)(2)(A), Plaintiffs' nondischargeable claim against

10

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Perez based on this misrepresentation is limited to the amount of any money paid to Yau based on the misrepresentations. Plaintiffs paid nothing to Yau based on that misrepresentation; they merely executed the Yau Contract. Plaintiffs paid Yau the payments called for by the Yau Contract upon on her successful completion of various specified tasks. Under 11 U.S.C. § 523(a)(6), Plaintiffs would be entitled to a nondischargeable claim against Perez in the amount of any consequential damages suffered as a result of the fact that Yau was not an architect. However, the Court was not persuaded that Plaintiffs suffered any such damages. There is no evidence that the quality of what Yau provided was less than that which an architect would have provided.

Plaintiffs contend that, had Yau been a licensed architect, she would have prevented Perez from perpetrating his fraudulent scheme against them. The Court was not persuaded that this was so. Plaintiffs failed to establish that Yau lacked the ability, due to the lack of a license, to monitor the project. Given her relationship with Perez, even had she obtained her license by the time the project was performed, it is unlikely that Yau would have done anything different or that Plaintiffs would have suffered any less damages.

Furthermore, the Court was not persuaded that the misrepresentation that Perez's and Yau's businesses were separate made with intent to deceive, material, relied upon by Plaintiffs, or that it proximately caused Plaintiffs any damages. As noted above,

11

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Perez made this representation to assure Plaintiffs that they could hire one of them without hiring the other. No evidence was presented that Plaintiffs could not have used a contractor other than Perez after Yau drew the plans.

However, Plaintiffs did succeed in proving their fundamental contention--i.e., that the Perez Contract was a sham. The Court was persuaded that Perez executed the Perez Contract with no intention of performing it according to its terms. It was merely a device to obtain cash. As an experienced contractor, Perez could not have believed that the work Plaintiffs wanted done could be completed for $92,000. Moreover, the Court was persuaded that Perez never had any intention of attempting to ensure that the style and quality of the addition matched that of the existing Residence.

The Court was further persuaded that Perez caused his employees to do work out of order so as to make it appear that he was entitled to the next progress payment. Plaintiffs relied on the misrepresentations made by Perez's employees, at his instigation, that work had been completed entitling him to first two progress payments. In the instance of the third progress payment, Plaintiffs relied on Perez's written promise not to divert the funds and to complete the project promptly. Thus, Plaintiffs are entitled to a nondischargeable claim pursuant to 11 U.S.C. § 523(a)(2)(A) in the amount of the money transferred to Perez in reliance on this fraudulent scheme--$69,000.

12

MBC 2401

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Plaintiffs are also entitled to a nondischargeable claim against Perez under 11 U.S.C. § 523(a)(6) based on the sham contract.[3] The sham contract was an intentional act or series of acts that necessarily led to the damages suffered by Plaintiffs. In re Cecchini, 772 F.2d 1493, 1495-96 (9th Cir. 1985). Such a claim is not limited to the amount of the money or value of the property transferred in reliance on the misrepresentation. A plaintiff may recover the same measure of damages that would be recoverable for such a claim under state law--in this instance, California law. In re Britton, 950 F.2d 602, 606 (9th Cir. 1991).

Plaintiffs seek several types of damages: i.e., their additional costs to complete the construction in excess of the contract price, their lost savings had they been able to refinance in September 1993, when interest rate were low, emotional distress damages, and punitive damages. However, the basis upon which Plaintiffs have calculated these damages is legally flawed. In California, damages for fraud are based on out of pocket expenses as consequence of the fraud. The defrauded plaintiff may not be awarded the benefit of his bargain. Cal.Civ.Code § 3343; Bagdasarian v. Gragnon, 31 C.2d 744, 762 (1948); Campbell v. Birch, 19 C.2d 778, 793 (1942). Rather than comparing their expenditures to the contract

---

[3]As discussed below, the Court concludes that Plaintiffs have failed to establish any consequential damages under 11 U.S.C. § 523(a)(6) as a result of the misrepresentation that Yau was an architect.

13

MBC 2402
Case: 09-05063    Doc# 84    Filed: 10/27/11    Entered: 10/27/11 21:14:34    Page 13 of 35

price--$92,000--Plaintiffs should have compared those expenditures to the reasonable value of the construction.

Evidence was presented that the addition should have cost approximately $150,000. Plaintiffs are entitled to a claim for any amounts in excess of this sum which they were forced to expend as a result of Perez's fraud. Exhibit 34 sets forth Plaintiffs' calculation of their damages. According to this exhibit, Plaintiffs paid Marzolf Brothers ("Marzolf")--the contractor hired to complete the job--$105,382.93 and made direct payments for labor, materials, and for the transfer of the building permit totalling $14,335.47. They also paid Perez $69,000. Thus, Plaintiffs paid $188,718.40 for a project that should have cost only $150,000. Their out of pocket damages equal the difference between these two figures--$38,718.40.

Exhibit 34 also sets forth several other elements of alleged pecuniary loss. These other elements also appear to represent a benefit of the bargain approach. They are premised on the assumption that the work could have been completed in two months as represented by Perez. The Court was not persuaded that this was true. The Court found significant that it took Marzolf approximately nine months to complete the job. It is reasonable to assume that, had Marzolf done the job from scratch, instead of Perez, the job would have taken Marzolf at least this long. It is possible that Marzolf could have completed the job in less time had he not been required to correct Perez's work. However, Plaintiffs failed to carry their burden of proof that this was so. Thus, the Court concludes that Plaintiffs'

14

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

claim for pecuniary loss damages under 11 U.S.C. § 523(a)(6) is limited to the sum of $38,558.40.        Moreover, although Plaintiffs have established both a nondischargeable claim for $69,000 under § 523(a)(2)(A) and a nondischargeable claim for $38,558.40 under § 523(a)(6), these claims are clearly duplicative and must be awarded in the alternative.   Plaintiffs may not recover on both claims. Since the claim under § 523(a)(2)(A) provides a greater recovery, the Court assumes that Plaintiffs will rely on this award as the measure of their damages.

Plaintiffs also seek emotional distress damages pursuant to 11 U.S.C. § 523(a)(6) for the disruption to their personal lives caused by the delays.   California law permits the recovery of such damages based on fraud.  Hork v. Campbell, 164 C. 343, 348 (1912); O'Hara v. Western Seven Trees Corp., 75 Cal.App. 3d 798 (1977).  Moreover, this Court concludes that there is no reason why these damages should not be included within Plaintiffs nondischargeable claim against Perez under 11 U.S.C. § 523(a)(6).   The evidence made it clear that the damage caused by Perez's fraud did not just result in pecuniary loss to Plaintiffs, that it took a great emotional toll.  Family relations were adversely affected for an extended period of time.  The cost of completing the construction was well beyond Plaintiffs' stated budget.  Plaintiffs were confronted with the possible loss of their home, which represented the principal part of their personal wealth. Such a fear necessarily caused great emotional distress.

15

MBC 2404

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

Nonpecuniary damages are always difficult to quantify. Plaintiffs do not suggest what amount would be appropriate to compensate them for their distress. The Court must make its own determination based on the equities as they appear based on the evidence presented at trial. On that basis, the Court concludes that $25,000 is an appropriate amount to compensate Plaintiffs for the anxiety and discomfort caused them by Perez's fraud.

Finally, Plaintiffs seek an award of punitive damages to punish Perez for his outrageous conduct and to deter such conduct in the future. Punitive damages are available under California law where a defendant's fraudulent conduct is particularly outrageous and where the fraud is proved by clear and convincing evidence. Cal.Civ. Code § 3294; In re Klause, 181 B.R. 487, 492-93 (Bankr. C.D.Cal. 1995). The Court finds Perez's fraudulent conduct, as clearly and convincingly established at trial, sufficiently outrageous to warrant punitive damages. Perez was not simply guilty of an isolated fraudulent misrepresentation. One might understand, if not condone, an isolated instance of fraud given Perez's financial pressures. To the contrary, the facts presented at trial established that Perez was guilty of orchestrating an elaborate and extended fraudulent scheme.

Moreover, at trial, Perez appeared cynical and unrepentant. His testimony lacked credibility. His lack of respect for the judicial process was best established by the testimony of a former employee. The former employee testified credibly that Perez had attempted to persuade him to sign a false declaration stating that Plaintiff

16

MBC 2405

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

1

2  Haverkamp had threatened Perez with a stick and that the employee was

3  also afraid of Haverkamp.  Perez hoped to use this as an excuse for

4  having abandonned the project.   The employee refused to sign the

5  declaration because he knew it was false.  An attempt to suborn

6  perjury should not go unpunished.

7      The Court concludes that punitive damages in the amount of

8  $25,000 should be imposed so as to punish Perez for his conduct and

9  deter his future conduct.  This amount seems modest in proportion to

10  the seriousness of the misconduct.  However, in assessing punitive

11  damages, the Court must consider the egregiousness of the conduct,

12  the amount of the compensatory damages, and the financial condition

13  of the defendant.  Neal v. Farmers Ins. Exchange, 21 Cal. 3d 910, 928

14  (1978), cited in In re Klause, 181 B.R. 487, 494 (Bankr. C.D.Cal.

15  1995).  Perez has just completed a chapter 7 bankruptcy case and thus

16  has lost all his nonexempt assets.  As a result of this judgment, he

17  may have difficulty obtaining future work in his field.  Under these

18  circumstances, the sum assessed appears appropriate.

19  B.   CLAIMS AGAINST YAU

20      Plaintiffs also seek nondischargeable judgments against Yau

21  under both 11 U.S.C. § 523(a)(2)(A) and (6).  They base their claims

22  against Yau in part on the theory that Yau acted as Perez's partner

23  and thus was liable for his conduct.  On this ground, they contend

24  that they are entitled to a nondischargeable claim against her in the

25  same amount as against Perez.  In addition, Plaintiffs contend that

26

17

MBC 2406

Yau herself was guilty of several intentional misrepresentations and fraudulent concealments.

The Court rejects the contention that Perez and Yau were partners and that, as Perez's partner, Yau is equally liable with Perez for all of Plaintiffs' damages. Perez and Yau both testified that they were partners in Yau's business. However, the circumstances under which the business was established and operated contradicts that testimony. There was no partnership agreement, written or oral, even concerning the percentage of Perez's and Yau's partnership interests. Yau expressed uncertainty about the meaning of the term "partnership." The Court was persuaded that the so-called partnership had no existence in reality, that Perez established "Yau's business" for his own convenience, and that he dominated and controlled it solely for his own benefit.

Plaintiffs also contend that Yau herself intentionally misrepresented to them that she was an architect, that her and Perez's businesses were totally separate, and that she intended to perform all the provisions of the Yau Contract. All of these claims fail. As discussed above, the Court was not persuaded that the misrepresentation that Perez's and Yau's businesses were totally separate was made with intent to deceive or was material to Plaintiffs.

The Court was persuaded that the misrepresentation concerning Yau's status as an architect was made with intent to deceive and was material. However, Plaintiffs failed to establish that they paid Yau

18

MBC 2407

Case: 09-05063    Doc# 84    Filed: 10/27/11    Entered: 10/27/11 21:14:34    Page 18 of 35

the $6,500 in reliance on this representation (rather than on the work successfully performed) or that they suffered damages proximately caused by this misrepresentation.

Yau admitted that she had never had any intention of performing the printed provisions contained on the Yau Agreement: e.g., to act as their liaison and advocate with Perez in the event of a dispute. Plaintiffs contend that they discussed these provisions with her and relied on her implied promise to perform them in entering into the Yau Contract. Had Yau performed as agreed, according to Plaintiffs, Perez could not have succeeded in his scheme.

Plaintiffs failed to carry their burden of proof as to this contention. The Court was not persuaded that Plaintiffs considered this promise a material part of the bargain. Three factors cause the Court to reach this conclusion. First, the payment schedule provided that Yau would be paid in full before these obligations were even begun. Normally, payment for critical services is made after, not before, those services are performed. Second, when Plaintiffs had doubts concerning the propriety of making a progress payment demanded by Perez, there is no evidence that Plaintiffs consulted Yau for her advice and assistance. Finally, given Perez's and Yau's relative ages and obviously close business relationship, Plaintiffs could not justifiably have believed that Yau would be an effective advocate for them with Perez.

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

19

**CONCLUSION**

All of Plaintiffs' claims against Yau fail.  Plaintiffs are entitled to a nondischargeable claim against Perez pursuant to 11 U.S.C. § 523(a)(2)(A) in the amount of $69,000 (or alternatively under 11 U.S.C. § 523(a)(6) in the amount of $38,558.40). Additionally, Plaintiffs are entitled to a claim under § 523(a)(6) for emotional distress damages in the amount of $25,000 and punitive damages in the amount of $25,000.  Plaintiffs are also entitled to pre-judgment interest on the pecuniary portion of their claim from the time the amounts were expended and to their costs of suit, not including their attorneys' fees.  Plaintiffs are directed to submit a proposed form of judgment in accordance with this decision.

Dated:  January 5, 1996

_Leslie Tchaikovsky_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

20

MBC 2409

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 20 of 35

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

the $6,500 in reliance on this representation (rather than on the work successfully performed) or that they suffered damages proximately caused by this misrepresentation.

Yau admitted that she had never had any intention of performing the printed provisions contained on the Yau Agreement: e.g., to act as their liaison and advocate with Perez in the event of a dispute. Plaintiffs contend that they discussed these provisions with her and relied on her implied promise to perform them in entering into the Yau Contract. Had Yau performed as agreed, according to Plaintiffs, Perez could not have succeeded in his scheme.

Plaintiffs failed to carry their burden of proof as to this contention. The Court was not persuaded that Plaintiffs considered this promise a material part of the bargain. Three factors cause the Court to reach this conclusion. First, the payment schedule provided that Yau would be paid in full before these obligations were even begun. Normally, payment for critical services is made after, not before, those services are performed. Second, when Plaintiffs had doubts concerning the propriety of making a progress payment demanded by Perez, there is no evidence that Plaintiffs consulted Yau for her advice and assistance. Finally, given Perez's and Yau's relative ages and obviously close business relationship, Plaintiffs could not justifiably have believed that Yau would be an effective advocate for them with Perez.

19

MBC 2410
Case: 09-05063  Doc# 84  Filed: 10/27/11  Entered: 10/27/11 21:14:34  Page 21 of 35

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

## CONCLUSION

All of Plaintiffs' claims against Yau fail.  Plaintiffs are entitled to a nondischargeable claim against Perez pursuant to 11 U.S.C. § 523(a)(2)(A) in the amount of $69,000 (or alternatively under 11 U.S.C. § 523(a)(6) in the amount of $38,558.40). Additionally, Plaintiffs are entitled to a claim under § 523(a)(6) for emotional distress damages in the amount of $25,000 and punitive damages in the amount of $25,000.  Plaintiffs are also entitled to pre-judgment interest on the pecuniary portion of their claim from the time the amounts were expended and to their costs of suit, not including their attorneys' fees.  Plaintiffs are directed to submit a proposed form of judgment in accordance with this decision.

Dated:  January 5, 1996

_Leslie Tchaikovsky_
United States Bankruptcy Judge

20

MBC 2411

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 22 of 35

 **LexisNexis®**

**In re: JUAN PEREZ dba PCT DEVELOPMENT, Debtor. JUAN PEREZ, Appellant, v. JAMES A. HAVERKAMP; M.C. TAYLOR, Appellees.**

No. 97-16003

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*1998 U.S. App. LEXIS 6675*

**March 12, 1998, Submitted, San Francisco, California "**

\*\*   The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4.

**April 2, 1998, Filed**

**NOTICE:**   [\*1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**   Reported in Table Case Format at: *1998 U.S. App. LEXIS 15589.*

**PRIOR HISTORY:**   Appeal from a Decision of the Ninth Circuit Bankruptcy Appellate Panel. B.A.P. No. NC-96-1186-RVRy. Russell, Volinn, and Ryan, Bankruptcy Judges, Presiding.

**DISPOSITION:**   AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant debtor challenged an order of the Ninth Circuit Bankruptcy Appellate Panel affirming a bankruptcy court's judgment of nondischargeability in an adversary proceeding filed by appellee creditors.

**OVERVIEW:** Creditors sought nondischargeable judgments against the debtor pursuant to *11 U.S.C.S. §§ 523(a)(2)(A), (a)(6).* The bankruptcy court found that the construction contract the debtor entered into with the creditors was a fraudulent sham, thereby meeting the nondischargeability requirements of *§§ 523(a)(2)(A),*

*(a)(6).* On appeal, the court affirmed in light of the evidence that the debtor did not intend to perform the contract according to its terms. The court affirmed the finding of $ 69,000 in out-of-pocket damages pursuant to *11 U.S.C.S. § 523(a)(2)(A),* as the bankruptcy court's determination that the creditors received no value from the debtor's work was not clearly erroneous. The court also affirmed a nondischargeable judgment of $ 25,000 for emotional distress damages pursuant to *11 U.S.C.S. § 523(a)(6)* because the debtor's fraud took a great emotional toll on the creditors. Finally, as the award was supported by the egregiousness of the debtor's fraudulent conduct, the court also upheld the award of punitive damages against the debtor.

**OUTCOME:** The judgment of nondischargeability of the debtor's obligation to the creditors was affirmed.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Embezzlement & Fraud*
*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*
*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview*

[HN1] *11 U.S.C.S. § 523(a)(2)(A)* provides that a debtor is not entitled to be discharged from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; for willful and malicious injury by the debtor to another entity or to the property of another entity.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Embezzlement & Fraud*
[HN2] The United States Court of Appeals for the Ninth Circuit has adopted a five-part test to determine an exception to discharge under *11 U.S.C.S. § 523(a)(2)(A)*: (1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; (5) the creditor sustained damage as the proximate result of the representation.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*
[HN3] *11 U.S.C.S. § 523(a)(6)* provides that an individual may not be discharged from debt for willful and malicious injury by the debtor to another entity or to the property of another entity. "Willful and malicious" does not require the creditor to prove that the debtor acted with intent to injure. Rather, it requires only that the creditor prove that there was a wrongful act which was done intentionally and which necessarily produces harm, even absent proof of a specific intent to injure.

*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Contracts Law > Statutes of Frauds > General Overview*
*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview*
[HN4] *Cal. Civ. Code § 1572* defines fraud as consisting, in part, of a promise made without any intention of performing it.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Fraud*
*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*

*Torts > Damages > Compensatory Damages > Pain & Suffering > Emotional & Mental Distress > General Overview*
[HN5] In determining dischargeability under *11 U.S.C.S. § 523(a)(6)*, state law generally determines whether the plaintiff would have a claim against the debtor. California law permits the recovery of emotional distress damages based on fraud. Accordingly, emotional distress damages may be awarded under *§ 523(a)(6)* to compensate for non-physical injuries caused by a debtor's willful and malicious acts.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Embezzlement & Fraud*
*Civil Procedure > Remedies > Damages > Punitive Damages*
*Torts > Damages > Punitive Damages > Conduct Supporting Awards*
[HN6] Under *Cal. Civ. Code § 3294*, punitive damages may be awarded where the defendant's conduct has been outrageous, morally culpable or in conscious disregard of the rights of others, for the purpose of punishing him and deterring him and others from such conduct in the future. *Section 3294* specifically provides for the allowance of punitive damages in the case of fraud. Evidence of the fraud must be by clear and convincing evidence. *Cal. Civ. Code § 3294(a)*. Punitive damages are subject to findings of nondischargeability pursuant to section *11 U.S.C.S. § 523(a)(6)*.

**COUNSEL:** JUAN PEREZ, Appellant, Pro se, Oakland, CA.

JAMES A. HAVERKAMP, Appellee, Pro se, Alameda, CA.

For M. C. TAYLOR, Appellee: Jon R. Vaught, Esq., Oakland, CA.

**JUDGES:** Before: SNEED, WOOD, *** and O'SCANNLAIN, Circuit Judges.

    *** The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

**OPINION**

   MEMORANDUM *

    * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *9th Cir. R. 36-3*.

Debtor Juan Perez appeals a Bankruptcy Appellate Panel's ("BAP") order affirming a bankruptcy court's judgment of nondischargeability in an [*2] adversary proceeding filed by creditors James Haverkamp and M.C. Taylor, arising when Haverkamp and Taylor contracted with Perez to construct an addition to their house in Oakland, California. The BAP held that Perez defrauded Haverkamp and Taylor with a sham contract, and awarded damages that were nondischargeable under either *11 U.S.C. § 523(a)(2)(A)* or *11 U.S.C. § 523(a)(6)*. We affirm.

The facts are known to the parties, and we shall not repeat them here.

I

Haverkamp and Taylor seek nondischargeable judgments against Perez pursuant to *11 U.S.C. § 523(a)(2)(A)* and *(a)(6)*. [HN1] *Section 523(a)* provides that a debtor is not entitled to be discharged from any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

[HN2] This court has adopted a five-part test to determine an exception to discharge under *section 523(a)(2)(A)*:

(1) that [*3] the debtor made a representation;

(2) the debtor knew at the time the representation was false;

(3) the debtor made the representation with the intention and purpose of deceiving the creditor;

(4) the creditor relied on the representation;

(5) the creditor sustained damage as the proximate result of the representation.

*In re Apte, 96 F.3d 1319, 1322 (9th Cir. 1996)*; *In re Kirsh, 973 F.2d 1454, 1457 (9th Cir. 1992)*.

[HN3] *Section 523(a)(6)* provides that an individual may not be discharged from debt for "willful and malicious injury" by the debtor to another entity or to the property of another entity. "Willful and malicious" does not require the creditor to prove that the debtor acted with intent to injure. Rather, it requires only that the creditor prove that there was a "wrongful act" which was "done intentionally" and which "necessarily produces harm," "even absent proof of a specific intent to injure." *In re Cecchini, 780 F.2d 1440, 1443 (9th Cir. 1986)*.

The bankruptcy court found that the construction contract that Perez entered into with Haverkamp and Taylor was a fraudulent "sham," thereby meeting the nondischargeability requirements of *§ 523(a)(2)(A)* and [*4] *(a)(6)*. The trial record provides firm support for the bankruptcy court's conclusion that Perez used the contract merely as a device to obtain cash to allay his financial problems, and that Perez had no intention of performing the contract according to its terms. The record shows that: (1) Perez promised that the construction could be done for less than $ 100,000, whereas experts testified that it would be impossible to complete it on such a low budget; (2) Perez urged Haverkamp and Taylor to enter into the contract immediately so that Perez could complete the addition before the rainy season, whereas construction experts testified that the project could never be completed in such a short period; (3) Perez's employees misrepresented to Haverkamp and Taylor that work had been completed, thereby inducing Haverkamp and Taylor to make two progress payments; and (4) Perez promised Haverkamp and Taylor that he would work on the project without interruption in order to obtain the third progress payment, and then proceeded to quit once that payment had been received.

Perez maintains that the BAP was incorrect to conclude that his contract with Haverkamp and Taylor was a "sham." Perez argues [*5] that in order for the contract to have been a sham, he would have had to engage in "actual fraud," as defined by *California Civil Code Section 1572*. [HN4] That statute defines fraud as consisting, in part, of a "promise made without any intention of performing it[.]" See *Cal. Civ. Code § 1572*.

Perez maintains that the BAP erred in finding fraud because "there is undisputed evidence that defendant did intend to, and did in fact, perform a substantial portion of the contract." Perez argues that the BAP could not have

found that he did not have "*any* intention of performing the contract," as required by *California Civil Code Section 1572*, because he performed a "substantial" portion of the contract. We disagree. Even if Perez's assertion that he performed a substantial portion of the contract is accepted as true, it establishes at most that Perez had an intention of performing *some* of the contract. It assuredly does not establish that Perez had an intention of performing *all* of the contract. *See Cal. Civ. Code § 1572*.

In light of the aforementioned evidence that Perez did not intend to perform the contract *according to its terms*, we affirm the BAP's holding that [*6] the nondischargeability requirements of *§ 523(a)(2)(A)* and *(a)(6)* have been met.

II

The bankruptcy court determined that Haverkamp and Taylor's nondischargeable claim under *§ 523(a)(2)(A)* was $ 69,000, and that their nondischargeable claim under *§ 523(a)(6)* was $ 38,718.40. The court stated that Haverkamp and Taylor "may not recover on both claims," and "assumed" that "since the claim under *§ 523(a)(A)* provides a greater recovery, . . . Plaintiffs will rely on this award as the measure of their damages." Perez contends that the bankruptcy court erred in calculating Haverkamp and Taylor's nondischargeable claim under *section 523(a)(2)(A)*. Perez maintains that, at most, Haverkamp and Taylor's nondischargeable claim is $ 13,169.

In determining the amount of damages to which Haverkamp and Taylor were entitled under *section 523(a)(2)(A)*, the bankruptcy court applied the "out-of-pocket" rule, as opposed to the "benefit-of-the-bargain" rule. *See In re Anguiano, 99 B.R. 436, 438 (9th Cir. BAP 1989)*. The bankruptcy court determined that Haverkamp and Taylor suffered out-of-pocket damages in the amount of $ 69,000, the total that Haverkamp and Taylor transferred to Perez in the form [*7] of three progress payments.

Perez maintains that Haverkamp and Taylor received some benefit from his work, and that the bankruptcy court's calculation of out-of-pocket damages should have been reduced accordingly. However, the bankruptcy court's conclusion that Haverkamp and Taylor received no benefit from Perez's work is amply supported by the record. At the time he entered into the contract with Haverkamp and Taylor, Perez estimated that the entire project would cost $ 92,000. However, the total amount that Haverkamp and Taylor were forced to pay contractor Wayne Marzolf to *complete* the job was $ 105,382.93. [1] A substantial amount of Marzolf's work was devoted to correcting shoddy work done by Perez.

1 This figure does not include $ 14,335.47 in direct payments made by Haverkamp and Taylor after Perez abandoned the project for labor, materials, and transferring building permits.

Perez argues that Marzolf's expenditures were inflated by "change orders" that were not provided for in the original contract. [*8] However, many of these change orders did not reflect upgrades but were instead corrections of work improperly done by Perez. The few genuine upgrades Haverkamp and Taylor asked Marzolf to make were credited to Perez in the calculation of Haverkamp and Taylor's damages. Because the bankruptcy court's determination that Haverkamp and Taylor received no value from Perez's work is not clearly erroneous, *see Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir. 1986)*, we affirm its award of $ 69,000 in out-of-pocket damages pursuant to *section 523(a)(2)(A)*.

III

The bankruptcy court also awarded Haverkamp and Taylor a nondischargeable judgment of $ 25,000 for emotional distress damages pursuant to *§ 523(a)(6)*. The court found that Perez's fraud took a great emotional toll on the creditors, in that the final cost of construction was beyond their means and they were confronted with the possible loss of their home. Perez contends that the bankruptcy court erred in awarding emotional distress damages to Haverkamp and Taylor.

[HN5] In determining dischargeability under *11 U.S.C. § 523(a)(6)*, state law generally determines whether the plaintiff would have a claim against the debtor. *See In re Klause,* [*9] *181 B.R. 487, 492 (Bankr. C.D. Cal. 1995)*. California law permits the recovery of emotional distress damages based on fraud. *See Murphy v. Allstate Ins. Co., 83 Cal. App. 3d 38, 147 Cal. Rptr. 565, 576 (Cal. Ct. App. 1978)*. Accordingly, emotional distress damages may be awarded under *§ 523(a)(6)* to compensate for non-physical injuries caused by a debtor's willful and malicious acts. *See In re Sotelo, 179 B.R. 214, 219 (Bankr. S.D. Cal. 1995)* (affirming $ 250,000 award for emotional distress damages as remedy for violation *section 523(a)(6)*).

Perez argues that the general rule in California is that emotional distress damages are not recoverable for injuries resulting from a breach of contract. *See Kwan v. Mercedes-Benz of North America, 23 Cal. App. 4th 174, 28 Cal. Rptr. 2d 371, 380 (Cal. Ct. App. 1994)*. However, Haverkamp and Taylor seek damages under *section 523(a)(6)* not for a breach of contract but for willful and malicious acts committed by Perez. Whether Perez may also have breached a contract with Haverkamp and Taylor is irrelevant to whether Perez is liable for emotional distress damages. *See Sprague v. Frank J. Sanders Lincoln Mercury, Inc., 120 Cal.* [*10] *App. 3d 412, 174*

*Cal. Rptr. 608, 611 (Cal. Ct. App. 1981).* In light of the bankruptcy court's findings of willful and malicious acts by Perez which resulted in serious disruption to the personal lives of Haverkamp, Taylor, and their children, we hold that the bankruptcy court did not err in awarding Haverkamp and Taylor emotional distress damages of $ 25,000. *See In re Anguiano, 99 B.R. 436, 438 (9th Cir. BAP 1989)* ("The trial court is in the best position to determine the appropriate damages in each case and in view of all the circumstances surrounding the underlying action.").

IV

Perez also appeals the BAP's affirmance of the bankruptcy court's award of $ 25,000 in punitive damages. [HN6] Under *California Civil Code Section 3294*, punitive damages may be awarded "where the defendant's conduct has been outrageous, morally culpable or in conscious disregard of the rights of others, for the purpose of punishing him and deterring him and others from such conduct in the future." *In re Klause, 181 B.R. 487, 492 (Bankr. C.D. Cal. 1995).* Section 3294 "specifically provides for the allowance of punitive damages in the case of fraud." *Id.* Evidence of the fraud must be by clear and convincing [*11] evidence. *See Cal. Civ. Code § 3294(a).* Punitive damages are "'subject to findings of nondischargeability pursuant to section[] 523(a)(6) . . . .'" *In re Britton, 950 F.2d 602, 606 (9th Cir. 1991)* (quoting *Moraes v. Adams (In re Adams), 761 F.2d 1422, 1428 (9th Cir. 1985)).*

The bankruptcy court awarded Haverkamp and Taylor $ 25,000 in punitive damages pursuant to *section 523(a)(6)*. This award was amply supported by the bankruptcy court's findings concerning Perez's fraudulent conduct. Examples of such conduct include: (1) Perez caused his employees to do work out of order so as to make it appear that Perez was entitled to the next progress payment; (2) Perez attempted to suborn perjured testimony by persuading a former employee to sign a false declaration stating that Haverkamp had threatened him with a stick and that the employee was afraid of Haverkamp; and (3) Perez appeared cynical and unrepentant at trial. [2] In light of the egregiousness of Perez's fraudulent conduct, the bankruptcy court did not err in awarding punitive damages of $ 25,000.

> 2   The bankruptcy court noted that a punitive damages award of $ 25,000 "seems modest in proportion to the seriousness of the misconduct." However, the court determined that such an award was appropriate in light of Perez's financial condition. *See In re Klause, 181 B.R. at 494* (debtor's financial condition may be considered in determining appropriate award of punitive damages).

[*12] V

For the foregoing reasons, the judgment of the Bankruptcy Appellate Panel is affirmed.

AFFIRMED.



**In re HUGO MARTINEZ, Debtor. JUAN TORRES and NORMA TORRES, Plaintiffs. v. HUGO MARTINEZ, aka Carlos H. Martinez aka Hugo Carlos Martinez, Defendant.**

**Case No. RS 07-12037 DN, Adv. No. RS 07-01140 DN, Chapter 7**

**UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2008 Bankr. LEXIS 470; 49 Bankr. Ct. Dec. 173*

**February 26, 2008, Decided**
**February 26, 2008, Filed; February 27, 2008, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff homeowners brought an adversary proceeding against defendant bankruptcy debtor, seeking a determination that a judgment debt to the homeowners based on the debtor's default under a construction contract was nondischargeable based on fraud and willful and malicious injury under *11 U.S.C.S. § 523(a)(2)(A), (a)(6).*

**OVERVIEW:** The homeowners contracted with the debtor for construction of an addition to the homeowners' residence, but the homeowners contended that the debtor falsely represented that he was a licensed contractor, collected progress payments for work which was not done, and abandoned the contract. The bankruptcy court held that the judgment debt obtained by the homeowners was not dischargeable based on fraud and willful and malicious injury. Despite the debtor's assertion to the contrary, the debtor represented that he was a licensed contractor while knowing that he was not licensed, and the debtor made the misrepresentation to induce the homeowners to enter into the contract. Further, the homeowners justifiably relied on the misrepresentation in deciding to have work performed by the debtor, and the amounts paid to the debtor for which no work was performed was a foreseeable consequence of the debtor's fraud. Moreover, the debtor knew that injury to the homeowners was substantially likely to occur as a result of the fraudulent inducement to enter into the sham contract, and the debtor's conversion of the homeowner's funds also constituted a willful and malicious injury.

**OUTCOME:** Judgment was entered in favor of the homeowners.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Embezzlement & Fraud*
[HN1] *11 U.S.C.S. § 523(a)(2)(A)* provides, in part, that a bankruptcy discharge under *11 U.S.C.S. § 727* does not discharge an individual debtor from any debt for money or property to the extent obtained by false pretenses, a false representation, or actual fraud. *11 U.S.C.S. § 523(a)(2)(A).* To prove that a debt is nondischargeable pursuant to *§ 523(a)(2)(A),* a creditor must prove by a preponderance of the evidence that (1) the debtor made the representations, (2) that at the time he knew they were false, (3) that he made them with the intention and purpose of deceiving the creditor, (4) that the creditor relied on such representations, and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Real Property Law > Construction Law > Contractors & Subcontractors*

Case: 09-05063   Doc# 84   Filed: 10/27/11   Entered: 10/27/11 21:14:34   Page 28 of 35

Page 2

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

[HN2] Contractors are required to be licensed pursuant to the requirements as set forth in *Cal. Bus. & Prof. Code § 7000 et seq.*, known as the Contractors' State License Law. *Cal. Bus. & Prof. Code § 7026 (2007)* defines "Contractor" in part as any person who undertakes to or offers to undertake to, or submits a bid to, or does himself construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building or other structure. *§ 7026.*

*Governments > State & Territorial Governments > Licenses*
*Real Property Law > Construction Law > Contractors & Subcontractors*
[HN3] *Cal. Bus. & Prof. Code § 7031* prohibits unlicensed contractors from maintaining actions to recover compensation and additionally permits a party who has utilized the services of an unlicensed contractor to recover all compensation paid to him, even where the person for whom the work was performed knew that the contractor was unlicensed.

*Real Property Law > Construction Law > Contractors & Subcontractors*
[HN4] *Cal. Bus. & Prof. Code § 7159* sets forth the requirements that a licensed home improvement contractor must provide in a home improvement contract, including (1) mechanic's lien information, (2) change orders, (3) right to payment and performance bonds, (4) name, business address, and license number of the contractor, (5) description of project, (6) limitation of down payment not to exceed $ 1,000 or 10 percent of the contract price, whichever is less, (7) schedule of progress payments stated in dollars and cents with reference to a description of work to be performed and materials to be supplied, (8) prohibition to collect payment for work not yet completed or materials not yet delivered in 12-point boldface type, (9) notice regarding liability insurance, (10) notice regarding workers' compensation insurance, (11) three- and/or seven-day notice of right to cancel, and (12) a notice in at least 12-point typeface regarding a prohibition against using unlicensed contractors and contact information for the California Contractors' State License Board.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Embezzlement & Fraud*
[HN5] Nondischargeability of a debt in bankruptcy for fraud under *11 U.S.C.S. § 523(a)(2)(A)* requires justifiable reliance. Justification is a matter of the qualities and characteristics of a particular plaintiff, and circumstances

of the particular case rather than of the application of the community standard of conduct to all cases. A person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation.

*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > General Overview*
*Governments > State & Territorial Governments > Licenses*
*Real Property Law > Construction Law > Contractors & Subcontractors*
[HN6] *Cal. Bus. & Prof. Code § 7028* provides that it is a misdemeanor to act in the capacity of a contractor without a license.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*
[HN7] *11 U.S.C.S. § 523(a)(6)* provides, in part, that a bankruptcy discharge under *11 U.S.C.S. § 727* does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The willful requirement of *11 U.S.C.S. § 523(a)(6)* modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. To satisfy the "willful injury" requirement of *§ 523(a)(6)*, a plaintiff must demonstrate that the debtor had a subjective motive to inflict the injury, or that the debtor believed the injury was substantially certain to occur as a result of the debtor's conduct. The requirement of malicious injury is separate from the requirement of willfulness. A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements*
[HN8] Actual fraud, pursuant to *Cal. Civ. Code § 1572*, may be committed by a party to a contract with intent to deceive another party to the contract, or to induce the other party to enter the contract. The acts may include: the suggestion of a fact, of that which is not true by one who believes it is not true; a promise made without any intention of performing it; or any other act fitted to deceive.

Page 3

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*
[HN9] Conversion of the property of another constitutes a willful and malicious injury for purposes of nondischargeability of a debt in bankruptcy under *11 U.S.C.S. § 523(a)(6)*.

*Torts > Intentional Torts > Conversion > Elements*
[HN10] Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) a plaintiff's ownership or right to possession of the property; (2) a defendant's conversion by a wrongful act or disposition of property right; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge or intent of the defendant.

*Torts > Intentional Torts > Conversion > Elements*
[HN11] Money is subject to a action for conversion if a specific sum capable of identification is involved.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Remedies*
[HN12] The out-of-pocket measure of damages results in an award to a plaintiff of damages based upon what was paid due to fraud.

*Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Malicious & Reckless Behavior*
*Torts > Damages > Punitive Damages > Conduct Supporting Awards*
[HN13] An award of punitive damages is permitted in nondischargeability cases under *11 U.S.C.S. § 523(a)(6)*. Punitive damages may be awarded where fraud, oppression, or malice is proven by clear and convincing evidence. *Cal. Civ. Code § 3294*.

*Torts > Damages > Punitive Damages > Award Calculations > Factors*
[HN14] Evidence of a defendant's financial condition is a prerequisite to an award of punitive damages, and a plaintiff bears the burden of introducing such evidence.

COUNSEL: [*1] For Hugo Martinez, Debtor (6:07-bk-12037-DN): Stephen R Wade, The Law Offices of Stephen R Wade, Upland, CA.

Trustee: Arturo Cisneros, Riverside, CA.

For Juan Torres, Norma Torres, Plaintiffs: Thomas J Stolp, LEAD ATTORNEY, Fountain Valley, CA.

For Hugo Martinez, aka Carlos H Martinez aka Hugo Carlos Martinez, Defendant (6:07-ap-01140-DN): Stephen R Wade, The Law Offices of Stephen R Wade, Upland, CA.

JUDGES: David N. Naugle, Bankruptcy Judge.

OPINION BY: David N. Naugle

OPINION

MEMORANDUM OF DECISION

Plaintiffs, Juan and Norma Torres, filed a complaint against the debtor, Hugo Martinez, to determine the dischargeability of a debt pursuant to *11 U.S.C. § 523(a)(2)(A)* and *§ 523 (a)(6)*. [1] Trial was held on February 6 and 7, 2008. The Court has considered the documentary evidence, testimony of witnesses, including an assessment of the credibility of the witnesses, arguments and supplemental briefing by counsel and makes the following findings and conclusions pursuant to *Fed. R. Civ. P. 52* as incorporated by *Fed. R. Bank.P. Rule 7052*:

> 1  Unless otherwise indicated all Code, chapter and section references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1330*.

I. Findings of Fact

1. Mr. Martinez and Mr. and Mrs. Torres entered into [*2] a Contract on October 15, 2005, whereby the parties agreed that, in exchange for $ 100,000, Mr. Martinez would construct an addition to the Torres' residence located in Whittier, California (the "Property"), and the construction would conform to the drawings as specified in the blueprints (the "Project").

2. Conflicting testimony was presented by Mrs. Torres and Mr. Martinez as to whether Mr. Martinez represented that he was a licensed contractor. Mrs. Torres testified that, prior to executing the Contract, she inquired of Mr. Martinez as to whether he was a licensed contractor and he responded in the affirmative. When asked for his license, he stated that he did not have it with him. Mr. Martinez denied that he made the representation that he was a licensed contractor. I find the testimony of Mrs. Torres to be credible on this issue and find that, prior to the time the Contract was executed, Mr. Martinez represented to Mr. and Mrs. Torres that he was a licensed contractor. I do not find the testimony of Mr. Martinez to be credible.

Page 4

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

3. I find that Mr. Martinez knew he was not a licensed contractor at the time he represented otherwise and did so with the intent to deceive for the purpose [*3] of fraudulently inducing Mr. and Mr. Martinez to enter into the Contract so that he could obtain payment. The Contract was handwritten in Spanish by Mr. Martinez who signed the contract as "C. Hugo Martinez." He testified that Carlos Martinez was the name of his cousin, an alias which he used in 1988 and for a period of six years thereafter. He denied that he continues to use the alias or used it in 2005, yet failed to explain why he executed the Contract as C. Hugo Martinez. He further testified that he continues to do business with Grove Lumber under the name of Carlos Martinez and has not attempted to correct the records because he deals in cash. The document on which the Contract was written is a form entitled "Contractor's Invoice." Mr. Martinez placed his driver's license number on the Contract under the place designated on the form as "Your Work Order No." I find that this act was in furtherance of the fraudulent representation that he was a licensed contractor. Mr. and Mr. Torres had no prior experience with home improvement contracts and justifiably relied upon Mr. Martinez's representation that he was a licensed contractor in agreeing to enter into the Contract and pay him [*4] the Contract price of $ 100,000 to complete the addition to their Property.

4. Mr. and Mrs. Torres, in the company of Mr. Martinez, obtained various permits as the owners/builders on the Project.

5. The Contract does not contain a date of completion, nor does it contain a provision stating that the work will be performed in a substantial workmanlike manner. The testimony of the parties reflects that Mr. and Mrs. Torres sought to modify the Contract by sending Mr. Martinez a certified letter and inserting a date of completion. Mr. Martinez intentionally did not receive the letter, and the letter reflects that neither party signed the document. Accordingly, any attempt at modification failed, and I do not find that Mr. Martinez made any express representation to Mr. and Mrs. Torres that he would complete the Project in a substantial workmanlike manner nor that he would complete the Project by the summer of 2006.

5. The Contract terms indicated that payment would be made as the work progressed. From October of 2005 through the spring of 2006, Mr. Martinez sought and obtained payments from Mr. and Mr. Torres representing that the payments were for materials and/or labor for the Project as [*5] it progressed. A portion of the work was completed by October of 2006. During the preceding months, Mr. Martinez could not be located by Mr. and Mrs. Torres and the work had not progressed much although Mr. Martinez had been paid large amounts by Mr.

and Mrs. Torres. Mr. Martinez testified that during this time he began working for a company during the daytime hours and assisted his father-in-law in at least one other project on the evenings and weekends. Mr. Martinez would only appear at the Property for the purpose of collecting payment stating that the payment was for labor and materials for the Project. Mr. and Mr. Torres continued to make the progress payments to Mr. Martinez in the hope that he would complete the Project. Frustrated in their attempts to locate Mr. Martinez, and when his promises to complete the Project failed to materialize, Mr. and Mrs. Torres became dissatisfied.

6. Mr. and Mrs. Torres obtained loans in the approximate amount of $ 100,000 for the purpose of completing the work on the Project. In October of 2006, they took over work on the Project because they believed that Mr. Martinez had abandoned the job. During this time, Ricky Martinez, brother and co-worker [*6] of Mr. Martinez, installed windows at the Property and collected an additional payment from Mr. and Mrs. Torres, unbeknownst to Mr. Martinez. Mr. and Mrs. Torres filed a lawsuit in state court against Mr. Hugo Martinez for breach of contract, fraud and conversion arising from the Project ("State Court Action"). Default was entered against Mr. Martinez in the State Court Action in January 2007, and Mr. Martinez filed a petition under Chapter 7 on April 16, 2007.

7. Mr. Martinez produced receipts at trial for the purchase of materials for other jobs not associated with the Project, which included receipts that pre-dated the commencement of the Project. I find that Mr. Martinez produced these receipts in an effort to falsely represent that they were receipts of expenditures for the Project; Mr. and Mrs. Torres proved otherwise at trial. Mr. Martinez testified that he had several employees working on the Project, who were paid cash from the funds received from Mr. and Mrs. Torres, yet Mr. Martinez failed to provide any documentation or witnesses to substantiate this claim for such expenditures associated with the Project. I find that no credible evidence was presented by Mr. Martinez to [*7] prove that he paid any person for performing work on the Project that benefitted Mr. and Mrs. Torres. Accordingly, about $ 88,000 was diverted by Mr. Martinez and the use and/or whereabouts of the funds are unknown.

8. Mr. and Mrs. Torres, along with various contractors, family and friends completed the Project, which included obtaining approval from the City of Whittier for permits, and in some instances, re-doing work which had been completed by Mr. Martinez in a manner which failed to comply with municipal building codes. Mr. Martinez contends that the fact that Mr. and Mrs. Torres hired certain contractors, who were also unlicensed, following his abandonment of the Project, demonstrates

Page 5

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

that, even if he did represent that he was a licensed contractor, Mr. and Mrs. Torres did not rely upon the representation as it was their practice to hire persons to perform work in the most cost effective manner, i.e., an unlicensed contractor as opposed to one who is licensed. I reject this assertion. Mrs. Torres testified that after Mr. Martinez had abandoned the Project, left the Property in shambles, and taken their money, they had minimal funds available to complete the work and were forced [*8] to do much of the work themselves. They were assisted by family and friends, including persons and tradesmen who worked for companies but who were not licensed. The conduct of the Torres' following the abandonment by Mr. Martinez does not vitiate the fact that they justifiably relied on his false representation, which he knew was false and the fact that he intended to deceive them; and the loss and damage suffered by Mr. and Mrs. Torres was the proximate result of the representation made by Mr. Martinez. Mr. and Mrs. Torres did not solicit a licensed contractor to complete the work, which is understandable because they had already been defrauded by one person who claimed to be a licensed contractor. Further, their new approach was different in that the plumbing and other relatively minor parts of the project that they had completed were different in scope from the full Contract addition.

9. The homeowners were damaged by the misrepresentation because a licensed contractor would comply with the requirements that a project be paid for and expenditures be applicable for that project. Here, Mr. Martinez did not maintain a separate account for the Project.

10. When Mr. Martinez took a new [*9] full-time job and other projects, he continued to extract money from Mr. and Mrs. Torres for the fallacious progress on the Project. It is a reasonable inference from his later conduct in (a) diverting his time and attention to other interests, and (b) continuing to take payments from Mr. and Mrs. Torres that his intent from the beginning was to defraud them. An honest person faced with the inability to complete this ambitious Project as contracted would not attempt to disappear, as he did, and would try to work out a cancellation and refund arrangement, neither of which course was his approach.

11. I find that Mr. Martinez acted willfully and maliciously by representing himself as a licensed contractor for the purpose and with the intent to induce Mr. and Mrs. Torres to execute the Contract so that he could collect payment from them. The Contract was no more than a fraudulent sham, and Mr. Martinez had no intention of performing the Contract as agreed upon.

II. Conclusions of Law

(A) *Section 523(a)(2)(A)*

[HN1] *Section 523(a)(2)(A)* provides, in relevant part, that a discharge under *§ 727* does not discharge an individual debtor from any debt "for money [or] property...to the extent obtained by [*10] false pretenses, a false representation, or actual fraud..." *Section 523(a)(2)(A)*. To prove that a debt is nondischargeable pursuant to *§ 523(a)(2)(A)*, a creditor must prove by a preponderance of the evidence that "(1)the debtor made the representations, (2) that at the time he knew they were false, (3) that he made them with the intention and purpose of deceiving the creditor, (4) that the creditor relied on such representations, and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Britton v. Price, (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991)*.

(1) The Debtor Made the Representations

[HN2] Contractors are required to be licensed pursuant to the requirements as set forth in *Cal. Bus. & Prof. Code § 7000 et seq.*, known as the Contractors' State License Law. *Cal. Bus. & Prof. Code § 7026* defines "Contractor" in relevant part, as "any person who undertakes to or offers to undertake to, or submits a bid to, or does himself...construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building...or other structure..." *Cal. Bus. & Prof. Code § 7026* (2007). This section includes the addition to any structure. [*11] Mr. Martinez was a contractor within the meaning of *Cal. Bus. & Prof. Code § 7026*, who failed to comply with the licensing requirement.

California has strict statutory controls on contractor licensing, designed in substantial part for consumer protection. A discharge in bankruptcy is not the only goal of justice. Compare the nondischargeable judgment beyond just compensatory damages at issue in *Cohen v. De La Cruz, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998)* (treble damages and other sanctions for rent control violations).

[HN3] *Section 7031 of the Cal. Bus. & Prof. Code* prohibits unlicensed contractors from maintaining actions to recover compensation and additionally permits a party who has utilized the services of an unlicensed contractor to recover all compensation paid to him, even where the person for whom the work was performed knew that the contractor was unlicensed. *Hydrotech Sys., Ltd. v. Oasis Waterpark, 52 Cal. 3d 988, 1007, 277 Cal. Rptr. 517, 803 P.2d 370, 376 (1991)*.

Unlike the unlicensed contractor debtor in *In re Sabban, 384 B.R. 1, 2008 Bankr. LEXIS 526 (9th Cir. BAP 2008)*, BAP No. CC-07-1269-MoPaD, filed February 20, 2008, and ordered published, Mr. Martinez received funds from Mr. and Mrs. Torres but Mr. Martinez did not apply those funds [*12] to the Project (except for an insignificant amount).

Page 6

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

Mr. Martinez made the false representation that he was a licensed contractor at the initial meeting with Mr. and Mr. Torres prior to the time that Mr. and Mr. Martinez executed the Contract.

(2) At the Time the Representations Were Made the Debtor Knew They Were False

The fact that Mr. Martinez is not a licensed contractor is not a disputed issue of fact. Mr. Martinez admits that he is not. a licensed contractor; he contends that he never represented otherwise. I afford no weight to the testimony of Mr. Martinez and believe that he held himself out as a licensed contractor.

(3) The Debtor Made the Representations With the Intention and Purpose to Deceive the Creditor

When asked for his license, Mr. Martinez indicated that he did not have it with him. I conclude that Mr. Martinez represented that he was a licensed contractor with the intent and purpose to convey to Mr. and Mrs. Torres that false impression because they would be more likely to hire Mr. Martinez for the Project if he were a licensed contractor as opposed to an unlicensed contractor.

Mr. and Mrs. Torres believed that Mr. Martinez was a licensed contractor and, as a result, [*13] they were fraudulently deceived and induced to enter into the Contract. The fact that Mr. Martinez was not a licensed contractor placed them, as consumers, outside of the protections afforded to persons who contract with licensed contractors.

*Cal. Bus. & Prof. Code § 7028* provides that it is a misdemeanor for any person to engage in the business or act in the capacity of a contractor in this state without having a license, with certain exceptions which are inapplicable here. Mr. Martinez was operating outside of the laws of the State of California that have been enacted to regulate the construction trade and deter unlicensed contractors from acting as a contractors. I conclude that Mr. Martinez acted with the intent to deceive Mr. and Mrs. Torres.

Although Mr. Martinez did not represent that he was a "home improvement contractor" as defined in *Cal. Bus. & Prof. Code § 7150.1*, if he had been a licensed contractor, the Contract would have been subject to the requirements of [HN4] *Cal. Bus. § Prof. Code § 7159*, which sets forth the requirements that a "licensed" home improvement contractor must provide in a home improvement contract, including (1) mechanic's lien information, (2) change orders, [*14] (3) right to payment and performance bonds, (4) name, business address and license number of the contractor, (5) description of project, (6) limitation of down payment not to exceed $1,000 or 10 percent of the contract price, whichever is less, (7) schedule of progress payments stated in dollars

and cents with reference to a description of work to be performed and materials to be supplied, (8) prohibition to collect payment for work not yet completed or materials not yet delivered in 12-point bold-face type, (9) notice regarding liability insurance, (10) notice regarding workers' compensation insurance, (11) 3 and/or 7 day notice of right to cancel, and (12) a notice in at least 12-point typeface regarding a prohibition against using unlicensed contractors and contact information for the California Contractors' State License Board.

The foregoing represents the intent of the legislature to to regulate and control home improvement contracts, similar to the Contract procured by Mr. Martinez, to protect the consumer and provide certain remedies to a consumer when doing business with a licensed home improvement contractor.

(4) The Creditor Relied on Such Representations

[HN5] *Section 523(a)(2)(A)* [*15] requires justifiable reliance. *Field v. Mans, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995)*. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and circumstances of the particular case rather than of the application of the community standard of conduct to all cases." *Field, 516 U.S. at 71* citing *Restatement (Second) of Torts § 540 (1976)*. "A person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id. at 70*. The example as set forth in the Restatement is that of a seller of land who represents that the land is free of encumbrances. The Restatement notes that the buyer is justifiable in relying upon the representation notwithstanding that he could have merely walked across the street to the courthouse and discovered that the land was encumbered by a mortgage. Id.

Mr. and Mrs. Torres justifiably relied upon the representation that Mr. Martinez was a licensed contractor when he met with them at their home prior to entering into the Contract. Mr. Martinez had been recommended to Mr. and Mrs. Torres by a co-worker of Mr. Torres, who [*16] was pleased with work that Mr. Martinez had performed with respect to an addition to her home. Mr. and Mrs. Torres had not previously contracted for home improvement work and were justified in accepting his representation that he was a licensed contractor as true.

Whether a reasonable person would rely upon the representation of a contractor who states that he is a licensed contractor and who produces no contractor's license or proof thereof is not the inquiry before the Court. Whether it is reasonable for a consumer to accept the representation, or whether it is reasonable for a consumer to initiate an investigation, i.e., check the website of the State Contractors' License Board, is not the standard; the

Page 7

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

test is a lesser standard, a subjective standard, of whether the reliance was justifiable under the particular facts and circumstances.

Applying the standard of justifiable reliance to the facts of this particular case, I conclude that Mr. and Mrs. Torres were not required to undertake an investigation to determine whether Mr. Martinez was a licensed contractor following his representation.

(5) The Creditor Sustained the Alleged Loss and Damage as the Proximate Result of the Representations [*17] Having Been Made

As stated by the Ninth Circuit in In re Britton:

> Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy so that they depend on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.

Britton, 950 F.2d at 604 quoting W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 42 at 273 (5th ed. 1984).

In Britton, the fraud was perpetrated by an office manager who held himself out as a physician; "Britton's misrepresentation of himself as a physician constituted fraud within the meaning of § 523(a)(2)(A)." Id. Similarly, in this case, Mr. Martinez held himself out as a licensed contractor, and his misrepresentation that he was a licensed contractor satisfies the requirement of fraud pursuant to § 523(a)(2)(A).

The loss and damages incurred by Mr. and Mrs. Torres are a foreseeable consequence of being defrauded by Mr. Martinez, an unlicensed contractor who was operating outside the scope of the laws of the State [*18] of California for the licensing of contractors, which are provided to protect consumers. [HN6] Cal. Bus. & Prof. Code § 7028 provides that it is a misdemeanor to act in the capacity of a contractor without a license. "The purpose of [the] statutory contractor's licensing requirement is to protect the public from perils incident to contracting with incompetent or untrustworthy contractors." Davis Co. v. Superior Court of San Diego County, 1 Cal. App.3d 156, 158, 81 Cal. Rptr. 453 (1969). There is no policy reason to limit the damages sustained by Mr. and Mrs. Torres as a proximate result of Mr. Martinez' fraud.

Accordingly, I find the debt nondischargeable pursuant to § 523(a)(2)(A).

(B) Section 523(a)(6)

[HN7] Section 523(a)(6) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. Section 523(a)(6).

The willful requirement of § 523(a)(6) 'modifies the word injury, indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90, 95 (1998).

To [*19] satisfy the "willful injury" requirement of § 523(a)(6) a plaintiff must demonstrate that "the debtor had a subjective motive to inflict the injury;" or "that the debtor believed the injury was substantially certain to occur as a result of the debtor's conduct." Petralia v. Jercich, (In re Jercich), 238 F. 3d 1202, 1208 (9th Cir. 2001).

The requirement of "malicious injury" is separate from the requirement of "willful." Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Jercich at 1208 quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)(en banc).

[HN8] Actual fraud, pursuant to Cal. Civ. Code § 1572, may be committed by a party to the contract with intent to deceive another party to the contract, or to induce the other party to enter the contract. The acts may include "(1) [t]he suggestion of a fact, of that which is not true by one who believes it is not true;... (4) [a] promise made without any intention of performing it;... (5) [o]r any other act fitted to deceive." Id.

I find that Mr. Martinez fraudulently induced Mr. and [*20] Mrs. Torres to enter into a sham contract by stating that he was a licensed contractor when he knew that was not true, and he believed that the injury to Mr. and Mrs. Torres was substantially likely to occur based upon his actions. Mr. Martinez deceived Mr. and Mrs. Torres into making progress payments by his misrepresentations about the state of the Project, and although he did so for his own gain rather than with intent to hurt them, injury to Mr. and Mrs. Torres from the loss of their funds was a substantial and foreseeable certainty. The malicious prong of the test as set forth in Jercich is satisfied. Additionally, the evidence supports a finding that Mr. Martinez had no intention to perform to completion the contract as agreed upon, and that he performed only a portion of the work on the Project. The foregoing consti-

Page 8

2008 Bankr. LEXIS 470, *; 49 Bankr. Ct. Dec. 173

tutes a willful and malicious injury pursuant to § 523(a)(6).

[HN9] Conversion of the property of another also constitutes a "willful and malicious injury within the meaning of § 523(a)(6). Del Bino v. Bailey (In re Bailey), 197 F. 3d 997, 1000 (9th Cir. 1997). Mendoza v. Continental Sales, Co., 140 Cal. App. 4th 1395, 45 Cal. Rptr.3d 525 (Cal. Ct. App. 2006) defined conversion [*21] as follows:

> [HN10] Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property right; and damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge or intent of the defendant.

Mendoza, 140 Cal. App. 4th at 1405 quoting Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066, 80 Cal. Rptr. 2d 704 (1998).

[HN11] Money is subject to a action for conversion "if a specific sum capable of identification is involved." Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 451, 61 Cal. Rptr. 2d 707 (Cal. Ct. App. 1997) citing Weiss v. Marcus, 51 Cal. App.3d 590, 599, 124 Cal. Rptr. 297 (Cal. Ct. App. 1975).

In this case, the specific amount of funds which Mr. and Mrs. Torres gave to Mr. Martinez is established as $ 93,000. At the time Mr. Martinez obtained the funds and diverted them to other uses, Mr. and Mrs. Torres had the right to possession of those funds. Mr. Martinez converted the funds for his own purposes and failed to use the funds for the Project. Mr. and [*22] Mrs. Torres have satisfied the requirement of a willful and malicious injury. Accordingly, I also find the debt nondischargeable pursuant to § 523(a)(6).

Damages

[HN12] The "out of pocket" measure of damages results in an award to a plaintiff of damages based upon what was paid due to fraud. Henry v. Lehman Comm. Paper, Inc., 471 F.3d 977, 1001 (9th Cir. 2006). Mr. and Mrs. Torres paid Mr. Martinez $ 93,000. Mr Martinez is entitled to a setoff of $ 3,000 for material expenditures made in furtherance of the Project, and $ 2,000 for the labor portion of work which was completed. Accordingly, the debt in the amount of $ 88,000 is determined to be nondischargeable pursuant to § 523(a)(2)(A) and alternatively under § 523(a)(6).

[HN13] An award of punitive damages is permitted in nondischargeability cases under § 523(a)(6). Britton, 950 F.2d at 606. Punitive damages may be awarded where fraud, oppression or malice is proven by clear and convincing evidence. Cal. Civ. Code § 3294.

The California Supreme Court has decided that [HN14] "evidence of a defendant's financial condition is a prerequisite to an award of punitive damages, and that plaintiff bears the burden of introducing such evidence." Griffin v. Felton (In re Felton), 197 B.R. 881, 891 (9th Cir. 1996) [*23] citing Adams v. Murakami, 54 Cal. 3d.105, 284 Cal. Rptr. 318, 813 P.2d 1348 (1991). Mr. and Mrs. Torres included a statement regarding punitive damages in the joint proposed pretrial order, but failed to seek to bifurcate the issues of liability and damages at trial. Because no evidence was presented at trial on the issue of punitive damages, including evidence of Mr. Martinez's financial condition, I will not consider an award of punitive damages. Mr. Martinez filed bankruptcy in 2007; one can assume that the abandonment of this prong of damages by the plaintiffs was a prudent decision. The debt in the amount of $ 88,000 is determined to be nondischargeable pursuant to § 523(a)(2)(A) and alternatively under § 523(a)(6).

Counsel for the plaintiffs shall prepare and lodge a judgment in conformance with the foregoing Memorandum of Decision.

Date:FEB 26 2008

/s/

David N. Naugle

Bankruptcy Judge